| | |
|---|---|
| LIBERTY INSURANCE UNDERWRITERS INC. | JURY TRIAL DEMANDED |
| | CIVIL ACTION NO: _____ |
| Plaintiff | |
| v. | |
| GUIDEONE SPECIALTY INSURANCE | |
| Defendant. | |

Plaintiff Liberty Insurance Underwriters Inc. ("Liberty") brings this Complaint seeking declaratory relief and to recover damages from GuideOne Specialty Insurance ("GuideOne") and in support of the Complaint alleges the following:

## NATURE OF THE CASE

1. Liberty seeks declaratory relief and damages arising from GuideOne's unjustified refusal to pay its full pro rata share to settle underlying litigation, captioned *Marcos A. Lujan v. Chowan University and Lisa Bland*, Civil Action No. 2:17-cv-00057-FL (the "*Lujan* Action").

2. Plaintiff Marcos Lujan brought the underlying litigation against Lisa Bland, the Director of Sports Medicine at Chowan University, and Chowan University after he allegedly suffered liver and brain injuries during a Chowan University team soccer practice in extreme heat.

3. As addressed further below, Liberty issued a $1 million professional liability policy to Ms. Bland and GuideOne issued a $1 million primary general liability policy and a $5 million umbrella policy to Chowan University, under which Ms. Bland is also an insured.

4. In August 2019, GuideOne and Liberty settled the underlying lawsuit, with GuideOne paying $2.1 million on behalf of Chowan University and Liberty paying $900,000 on behalf of Ms. Bland. Liberty expressly reserved its right to recoup its overpayment from GuideOne. Indeed, in discussions leading up to and through settlement, Liberty's position was (and continues to be) that under the policies and applicable law, Liberty's exposure was limited to a pro rata share of any remaining settlement, after GuideOne's primary policy was exhausted through the payment of $1 million.

5. Consistent with that, Liberty's share of the settlement should have been approximately $333,000 rather than the $900,000 it paid under a reservation of rights—*i.e.*, $1/6^{th}$ of the $6 million in available excess coverage after the GuideOne primary policy's limits were exhausted. Therefore, Liberty seeks to recover $567,000, plus interest.

**PARTIES, JURISDICTION, AND VENUE**

6. Plaintiff Liberty is an Illinois corporation with its principal place of business in Massachusetts.

7. Defendant GuideOne is an Iowa corporation with its principal place of business in Iowa.

8. The Court has subject matter jurisdiction over this insurance coverage dispute under 28 U.S.C. § 1332(a) because there is complete diversity between Liberty and GuideOne, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

2

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the defendant GuideOne issued an insurance policy to Chowan University in Hertford County, North Carolina and therefore is subject to personal jurisdiction here.

## FACTUAL BACKGROUND

### The First GuideOne Policy

10.     GuideOne issued Policy No. 9912-895 to Chowan University for the April 13, 2016 to April 13, 2017 policy period (the "First GuideOne Policy"). The Commercial General Liability Coverage Part has a $1 million per occurrence and $3 million aggregate limit. A copy of the First GuideOne Policy is attached as Exhibit A.

11.     The Insuring Grant of the Commercial General Liability Coverage Part, Coverage A: Bodily Injury and Property Damage Liability provides as follows:

> We will pay those sums that the insured becomes legally obligated to pay as "damages" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those "damages". However, we will have no duty to defend the insured against any "suit" seeking "damages" for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

First GuideOne Policy, Commercial General Liability Coverage Part, Coverage A: Bodily Injury and Property Damage Liability, § 1.

12.     "Damages" means tort damages allowed by law. First GuideOne Policy, Commercial General Liability Coverage, § V(7), as amended by endorsement.

13.     "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. *Id.*, § V(4)

14.     The Policy provides that "employees" are insureds "for acts within the scope of their employment by [Chowan University] or while performing duties related to the conduct of [Chowan University's] business." *Id.*, § II(2). As such, Lisa Bland is an insured.

3

15. By its express terms, the First GuideOne Policy provides that it is primary, providing:

> This insurance is primary except when paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in paragraph c. below.

*Id.*, § IV(4).

### The GuideOne Umbrella Policy

16. GuideOne also issued Commercial Umbrella Liability Policy No. 9618-782 to Chowan University for the April 13, 2016 to April 13, 2017 policy period (the "GuideOne Umbrella Policy"). The Commercial General Liability Coverage Part has a $5 million per occurrence and $5 million aggregate limit. A copy of the GuideOne Umbrella Policy is attached as Exhibit B.

17. The Insuring Grant of the Commercial General Liability Coverage Part, Coverage A: Bodily Injury and Property Damage Liability provides as follows:

> We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. But the amount we will pay for the "ultimate net loss" is limited as described in Section III -- Limits of Insurance.

GuideOne Umbrella Policy, Commercial General Liability Coverage Part, Coverage A: Bodily Injury and Property Damage Liability, § 1.

18. As the GuideOne Umbrella Policy provides that employees are insureds to the extent that they qualify as insureds under the underlying insurance, Lisa Bland is also an insured under the Umbrella Policy.

19. The "Other Insurance" provision in the GuideOne Umbrella Policy contains an "excess" clause, providing that the Umbrella Policy is "excess over, and shall not contribute with

any of the other insurance, whether primary, excess, contingent or on any other basis, except such other insurance purchased specifically to apply in excess of this insurance." *Id.,* § IV(5)(a).

## The Liberty Policy

20. Liberty issued Professional Liability Policy No. AHY-361317005 to Lisa Bland for the September 1, 2015 to September 1, 2016 policy period (the "Liberty Policy"). The Liberty Policy has a $1 million per incident and occurrence limit and $3 million aggregate limit. A copy of the Liberty Policy is attached as Exhibit C.

21. The Professional Liability Coverage Insuring Agreement provides as follows:

> The Company will pay on behalf of the **Insured**[1] all sums which the **Insured** shall become legally obligated to pay as **Damages** because of **Bodily Injury** or **Property Damage** caused by an **Incident** or **Personal and Advertising Injury** offense, to which this insurance applies in the operation of the business or conduct of the profession of the **Named Insured** as specified in the Declarations, which occurs during the **Policy Period**.

Liberty Policy, § I(A).

22. **"Damages"** means compensatory judgments, settlements or awards but does not include punitive or exemplary **Damages** fines or penalties, the return of fees or other consideration paid to the **Insured**, or the portion of any award or judgment caused by the multiplication of actual **Damages** under federal or state law. *Id.,* § VII.

23. **"Bodily Injury"** means bodily injury, sickness or disease, mental anguish, psychological injury or emotional distress sustained by any person which occurs during the **Policy Period** including death at any time resulting therefrom. *Id.*

24. The "Other Insurance" clause of the Liberty Policy contains an "excess" clause that provides as follows:

> If there is other valid insurance (whether primary, excess, contingent or self-insurance) which may apply against a loss or claim covered by this policy, the

---

[1] Terms in bold are defined in the Liberty Policy.

insurance provided hereunder shall be deemed excess insurance over and above the applicable limit of all other insurance or self-insurance.

******

[W]hen both this insurance and other insurance or self-insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this policy for a greater proportion of the loss or defense costs than the applicable Limit of Liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss. Subject to the foregoing, if a loss occurs involving two or more policies, each of which provides that its insurance shall be excess, each will contribute pro-rata.

Liberty Policy, § VIII(H)(1)-(2).

## The Underlying Litigation and Settlement

25. The underlying matter arose out of the alleged negligence of Lisa Bland and Chowan University in permitting the Chowan University men's soccer team to perform a fitness assessment in high heat-index conditions.

26. On August 15, 2016, the team was scheduled to perform a fitness assessment. Marcos Lujan was a member and captain of the team. Mr. Lujan alleges that athletic trainer Michelle Aiken "cleared" him to perform the assessment that day, which consisted of three miles to be run at a target pace of six minutes per mile. According to Mr. Lujan, the heat index at the time of the assessment was 105 degrees Fahrenheit. Due to the high temperatures that day, Ms. Bland required that athletic activity be limited to one hour and that players have ample time for hydration and shaded rest.

27. Near the end of the third and final mile, Mr. Lujan stumbled and began to collapse. The athletic trainer on site called Ms. Bland to advise her of a heat-related illness, and stated that they were on their way back to the athletic training facility. Ms. Bland called 911.

28. Mr. Lujan was brought inside the training facility, where staff placed ice packs around his body. The training facility had a whirlpool tub that would normally have been used

6

Case 2:20-cv-00036-D   Document 1   Filed 06/12/20   Page 6 of 13

for an ice bath; however, there was insufficient ice that day as one of the two ice machines had been broken for over a month. The ambulance arrived within fifteen minutes, and Mr. Lujan was transported to the hospital.

29. As a result of his alleged injuries, Mr. Lujan subsequently brought an action against Chowan University in Hertford County, North Carolina. On or around April 13, 2017, Lisa Bland provided notice of the action against Chowan University, her employer, to Liberty. In a letter dated April 27, 2017, Liberty acknowledged receipt of the complaint against Chowan University and set forth its initial coverage position. A copy of the April 27, 2017 letter is attached as Exhibit D.

30. On November 10, 2017, after the action was removed to the United States District Court for the Eastern District of North Carolina, Mr. Lujan filed a complaint against Ms. Bland and Chowan University. The complaint alleged that Ms. Bland negligently allowed the team to practice in high-heat index conditions; failed to properly cool Mr. Lujan after he suffered heat stroke; negligently allowed an unlicensed athletic trainer to assess and authorize Mr. Lujan to participate in practice; failed to exercise best judgment; and failed to use a rectal thermometer to check his core body temperature. A copy of the complaint is attached as Exhibit E. On January 5, 2018 and August 9, 2018, Mr. Lujan filed an amended complaint and a second amended complaint. Copies of the complaints are attached as Exhibits F and G, respectively.

31. In a letter dated April 17, 2019, GuideOne stated its position on settlement was that its share of indemnity should be two thirds and Liberty's share of indemnity should be one third. A copy of the April 17, 2019 letter is attached as Exhibit H.

32. Liberty's position, on the other hand, was that any settlement amount above the $1 million First GuideOne Policy should be allocated pro rata between the GuideOne Umbrella

Policy and the Liberty Policy. In a letter dated July 16, 2019, Liberty expressly reserved its right to recover any amount Liberty pays above its pro rata share from GuideOne. A copy of the July 16, 2019 letter is attached as Exhibit I.

33. Subject to its right to seek recoupment from GuideOne, Liberty ultimately agreed to fund a portion of the settlement of the *Lujan* Action. On August 5, 2019, Liberty and GuideOne settled the *Lujan* Action for $3 million, with Liberty paying $900,000 on behalf of Ms. Bland and GuideOne paying $2.1 million on behalf of co-defendant Chowan University.

34. Liberty now seeks to recover damages from GuideOne for the amount Liberty paid to fund the settlement above its proper pro rata share.

## FIRST CAUSE OF ACTION
### Declaratory Judgment, U.S.C. § 2201

35. Liberty incorporates by references all other paragraphs of this Complaint.

36. Liberty issued a $1 million professional liability policy to Ms. Bland. GuideOne issued the $1 million First GuideOne Policy and the $5 million GuideOne Umbrella Policy to Chowan University, under which Liberty's insured, Lisa Bland, is also an insured.

37. Liberty and GuideOne settled the underlying lawsuit, with GuideOne paying $2.1 million on behalf of Chowan University and Liberty paying $900,000 on behalf of Ms. Bland. Any settlement above the $1 million First GuideOne Policy should have been allocated pro rata between the GuideOne Umbrella Policy and the Liberty Policy.

38. By its express terms, the First GuideOne Policy provides that it is primary:

> This insurance is primary except when paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in paragraph c. below.

First GuideOne Policy, Commercial General Liability Coverage, § IV(4).

39. The GuideOne Umbrella Policy provides that it is "excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis, except such other insurance purchased specifically to apply in excess of this insurance." GuideOne Umbrella Policy, Commercial General Liability Coverage, § IV(5)(a).

40. The Liberty Policy provides that it shall be "deemed excess insurance over and above the applicable limit of all other insurance or self-insurance." Liberty Policy, § VIII(H)(1).

41. Because both the Liberty Policy and the GuideOne Umbrella Policy both contain "excess" clauses, the two clauses cancel each other out.

42. As such, after the First GuideOne Policy was exhausted through the payment of $1 million, the remaining settlement amount should have been prorated between the GuideOne Umbrella Policy and the Liberty Policy according to their respective policy limits. In this case, based on its $5 million share of the $6 million in available limits (83%) above the First GuideOne $1 million Policy, GuideOne's share should have been approximately $1.66 million and Liberty's share should have been approximately $333,000.

43. A real and actual controversy exists between Liberty and GuideOne concerning the proper allocation of the settlement.

**WHEREFORE**, Liberty respectfully requests that the Court enter an order:

(a) Declaring that, after exhaustion of the $1 million First GuideOne Policy, the settlement should have been prorated between the GuideOne Umbrella Policy and the Liberty Policy;

(b) Declaring that Liberty's share of the settlement should have been a 1/6th share ($1 million of the total $6 million excess coverage available) of $2 million;

(c) Declaring that Liberty paid more than its pro rata share to fund the settlement of the *Lujan* Action;

(d) Awarding Liberty costs and expenses incurred in this action; and

(e) Awarding such further relief as the Court shall deem just and proper.

9
Case 2:20-cv-00036-D   Document 1   Filed 06/12/20   Page 9 of 13

## SECOND CAUSE OF ACTION
**Equitable Contribution**

44. Liberty incorporates by reference all other paragraphs of this Complaint.

45. GuideOne and Liberty settled the underlying lawsuit, with Liberty paying $2.1 million on behalf of Chowan University and Liberty paying $900,000 on behalf of Lisa Bland.

46. The settlement above the $1 million First GuideOne Policy should have been allocated pro rata between the GuideOne Umbrella Policy and the Liberty Policy.

47. Because Liberty paid more than its share of the loss in satisfaction of the settlement, it is entitled to contribution from GuideOne.

**WHEREFORE**, Liberty respectfully requests that judgment be entered in its favor and against GuideOne and asks this Court to:

(a) Award Liberty contribution from GuideOne in the amount of $565,000, plus interest;

(b) Award Liberty costs and expenses incurred in this action; and

(c) Award such other relief as the Court shall deem just and proper.

## THIRD CAUSE OF ACTION
**Equitable Subrogation**

48. Liberty incorporates by reference all other paragraphs of this Complaint.

49. Liberty paid more than its pro rata share to fund the settlement of the *Lujan* Action.

50. Liberty, as subrogee to the rights of its insured, has an equitable right of subrogation to recover the amount Liberty paid on behalf of Lisa Bland that should have been paid by GuideOne.

**WHEREFORE**, Liberty respectfully requests that judgment be entered in its favor and against GuideOne and asks this Court to:

(a) Award Liberty damages from GuideOne in the amount of $565,000, plus interest;

(b) Award Liberty costs and expenses incurred in this action; and

(c) Award such other relief as the Court shall deem just and proper.

### FOURTH CAUSE OF ACTION
### Contractual Subrogation

51. Liberty incorporates by reference all other paragraphs of this Complaint.

52. The Liberty Policy provides that "[t]o the extent of any payment under this policy, the Company shall be subrogated to all the Insured's rights of recovery therefore against any person, organization or entity and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights." Liberty Policy, Section VIII(J).

53. Liberty paid more than its pro rata share to fund the settlement of the *Lujan* Action.

54. Liberty, as subrogee to the rights of its insured, has a contractual right of subrogation to recover the amount Liberty paid on behalf of Lisa Bland that should have been paid by GuideOne.

**WHEREFORE**, Liberty respectfully requests that judgment be entered in its favor and against GuideOne and asks this Court to:

(a) Award Liberty damages from GuideOne in the amount of $565,000, plus interest;

(b) Award Liberty costs and expenses incurred in this action; and

(c) Award such other relief as the Court shall deem just and proper.

### FIFTH CAUSE OF ACTION
### Unjust Enrichment

55. Liberty incorporates by reference all other paragraphs of this Complaint.

56. Liberty paid more than its pro rata share to fund the settlement of the *Lujan* Action, thereby unjustly enriching GuideOne.

**WHEREFORE**, Liberty respectfully requests that judgment be entered in its favor and against GuideOne and asks this Court to:

(a) Award Liberty damages from GuideOne in the amount of $565,000, plus interest;

(b) Award Liberty costs and expenses incurred in this action; and

(c) Award such other relief as the Court shall deem just and proper

### DEMAND FOR A JURY TRIAL

Liberty hereby demands a trial by jury on all issues so triable.

Dated: June 12, 2020                    LEWIS BRISBOIS BISGAARD & SMITH, LLP

By: */s/ Christopher J. Derrenbacher*
Christopher J. Derrenbacher
North Carolina Bar No: 25402
*Attorneys for Plaintiff Liberty Insurance Underwriters Inc.*
4101 Lake Boone Trail, Suite 514
Raleigh, North Carolina 27607
Telephone: 919-821-4020
E-Mail: christopher.derrenbacher@lewisbrisbois.com

Dated: June 12, 2020

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER

By: /s/ Ronald P. Schiller /aa
Ronald P. Schiller
(*pro hac vice* forthcoming)
Michael R. Carlson
(*pro hac vice* forthcoming)
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
One Logan Square, 27th Square
Philadelphia, Pennsylvania 19103
(215) 568-6200
rschiller@hangley.com
mcarlson@hangley.com
*Attorneys for Plaintiff Liberty Insurance Underwriters Inc.*