IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:20-CV-36-D

LIBERTY INSURANCE UNDERWRITERS )
INC., )
                                                                                            Plaintiff, )
)
                        v. )                **ORDER**
)
GUIDEONE SPECIALTY MUTUAL )
INSURANCE COMPANY, )
)
                                       Defendant. )

On June 15, 2020, Liberty Insurance Underwriters Inc. ("Liberty") filed an amended complaint against GuideOne Speciality Insurance seeking a declaratory judgment and equitable relief or contractual subrogation based on a settlement payment the two insurers made in an underlying lawsuit [D.E. 3]. On July 10, 2020, GuideOne Speciality Insurance answered and asserted counterclaims against Liberty for a declaratory judgment and equitable relief or contractual subrogation [D.E. 12]. On February 2, 2021, the parties jointly moved to substitute GuideOne Mutual Insurance Company as the named defendant in place of GuideOne Specialty Insurance [D.E. 26]. On February 4, 2021, the court granted the motion to substitute [D.E. 28]. On September 15, 2021, GuideOne Mutual Insurance Company ("GuideOne") moved for summary judgment on its claims [D.E. 37] and filed a memorandum in support and statement of material facts [D.E. 38]. That same day, Liberty moved for summary judgment on its claims [D.E. 41] and filed a memorandum in support and statement of material facts [D.E. 42]. Thereafter, each party responded [D.E. 45, 48] and replied [D.E. 51, 54]. As explained below, the court grants GuideOne's motion for summary judgment and denies Liberty's motion for summary judgment.

I.

On November 10, 2017, Marco Lujan, a college soccer player, filed suit against Chowan University ("Chowan") and Lisa Bland, the head athletic trainer at Chowan, alleging claims concerning injuries he sustained during the Chowan University men's soccer team's August 15, 2016 fitness assessment in high heat-index conditions. See GuideOne's Stat. Mat. Facts ("GuideOne SMF") [D.E. 38-4] ¶¶ 13, 16–23; Liberty's Stat. Mat. Facts ("Liberty SMF") [D.E. 42-1] ¶¶ 1–8.

On August 15, 2016, the relevant date in the underlying litigation (the "Lujan Action"), there were three relevant insurance policies in place between the two defendants, Chowan and Bland. Chowan had a commercial general liability insurance policy issued by GuideOne ("GuideOne CGL Policy") that provided $1 million per occurrence and $3 million in the aggregate in liability coverage. See GuideOne SMF ¶ 3; Liberty SMF ¶¶ 9–10. Chowan also had a GuideOne commercial umbrella liability policy ("GuideOne Umberlla Policy") that included a $5 million per occurrence liability coverage limit. See GuideOne SMF ¶ 4; Liberty SMF ¶¶ 14–15. Bland had a healthcare professional liability insurance policy issued by Liberty ("Liberty Policy"), with a $1 million per incident/occurrence coverage limit. See GuideOne SMF ¶ 10; Liberty SMF ¶¶ 20–21.

GuideOne provided Chowan's defense in the Lujan Action and Liberty provided Bland's defense. See GuideOne SMF ¶¶ 8–11; Liberty's Resp. to GuideOne [D.E. 48-1] ¶¶ 8–11. On August 1, 2019, the parties to the Lujan Action reached a Mediated Settlement Agreement. See GuideOne SMF ¶ 24; Liberty SMF ¶ 29. On September 5, 2019, Lujan signed a Release and Settlement Agreement, releasing his claims in the Lujan Action for $3 million. See GuideOne SMF ¶¶ 25, 29; Liberty SMF ¶ 30. GuideOne contributed $2.1 million to fund the settlement, which represented the $1 million per occurrence coverage limit of the GuideOne CGL Policy and a payment of $1.1 million pursuant to the GuideOne Umbrella Policy. Liberty contributed $900,000 to fund the settlement pursuant to the Liberty Policy. See GuideOne SMF ¶¶ 26–27; Liberty's Resp. to GuideOne [D.E. 48-1] ¶¶ 8–11. During discussions of the allocation of the settlement payments,

2

Liberty asserted that any settlement amount above the $1 million GuideOne CGL Policy should be allocated pro rata between the GuideOne Umbrella Policy and the Liberty Policy and expressly reserved its rights to recover from GuideOne any amount Liberty paid above its pro rata share. See Liberty SMF ¶¶ 26–77; [D.E. 42-2] 478–81. The Mediated Settlement Agreement also stated: "This settlement constitutes a resolution of all issues between Plaintiff and Defendants. The settlement agreement shall have no effect on any claims that Liberty has or may have against GuideOne or that GuideOne has or may have against Liberty. Both carriers expressly reserve and do not waive any rights either may have against the other from this litigation." [D.E. 38-5] 403–04; see GuideOne SMF ¶ 28. Liberty then filed this action seeking $566,666 from GuideOne. [D.E. 3]. Guideone counterclaimed seeking $100,000 from Liberty. [D.E. 12]. Both parties moved for summary judgment. See [D.E. 37, 41].

II.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this determination, the court must view

3

the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Harris, 550 U.S. at 378.

A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. See Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position [is] insufficient ...." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248.

This court has subject-matter jurisdiction based on diversity jurisdiction. See 28 U.S.C. § 1332; cf. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671–72 (1950). Thus, the court applies state substantive law and federal procedural rules. See Erie R.R. v. Tompkins, 304 U.S. 64, 78–80 (1938); Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002).

Because this dispute requires interpreting a North Carolina insurance contract, the court applies North Carolina substantive law. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issues. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id.; Parkway 1046, LLC v. United States Home Corp., 961 F.3d 301, 306 (4th Cir. 2020); Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted).[1] In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate

---

[1] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013).

4

court unless there is persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 398 (quotation omitted); see Hicks v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

"The interpretation of language used in an insurance policy is a question of law, governed by well-established rules of construction." Trophy Tracks, Inc. v. Mass. Bay Ins. Co., 195 N.C. App. 734, 739, 673 S.E.2d 787, 790 (2009) (quotation omitted); see Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co., 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970); N.C. Farm Bureau Mut. Ins. Co. v. Mizell, 138 N.C. App. 530, 532, 530 S.E.2d 93, 95 (2000). "[T]he intention of the parties as gathered from the language used in the policy is the polar star that must guide the courts in the interpretation of such instruments." McDowell Motor Co. v. N.Y. Underwriters Ins. Co., 233 N.C. 251, 253, 63 S.E.2d 538, 540 (1951). When interpreting an insurance policy, the court may consider "the character of the business of the insured and the usual hazards involved therein in ascertaining the intent of the parties." Fulford v. Jenkins, 195 N.C. App. 402, 409, 672 S.E.2d 759, 763 (2009) (quotation omitted); see McDowell Motor Co., 233 N.C. at 253, 63 S.E.2d at 540. A court must construe an insurance contract as a reasonable person in the position of the insured would have understood the insurance contract. See Register v. White, 358 N.C. 691, 695, 599 S.E.2d 549, 553 (2004); Marriott Fin. Servs., Inc. v. Capitol Funds, Inc., 288 N.C. 122, 143, 217 S.E.2d 551, 565 (1975); Trophy Tracks, Inc., 195 N.C. App. at 738, 673 S.E.2d at 790.

Where a policy defines a term, that definition controls. See Gaston Cnty. Dyeing Mach. Co. v. Northfield Ins. Co., 351 N.C. 293, 299, 524 S.E.2d 558, 563 (2000); Woods v. Nationwide Mut. Ins. Co., 295 N.C. 500, 505–06, 246 S.E.2d 773, 777 (1978). Where a policy does not define a term,

5

a court gives "nontechnical words . . . their meaning in ordinary speech, unless the context clearly indicates another meaning was intended." Woods, 295 N.C. at 506, 246 S.E.2d at 777; see Gaston Cnty. Dyeing Mach. Co., 351 N.C. at 299, 524 S.E.2d at 563; Brown v. Lumbermens Mut. Cas. Co., 326 N.C. 387, 392, 390 S.E.2d 150, 153 (1990); Grant v. Emmco Ins. Co., 295 N.C. 39, 42, 243 S.E.2d 894, 897 (1978). Moreover, courts give a term in an insurance policy the same meaning throughout the various coverages unless the policy clearly expresses an intent to give different meanings to the term within the different coverages in the same policy. See Grant, 295 N.C. at 54, 243 S.E.2d at 904; Fieldcrest Cannon, Inc., 124 N.C. App. at 244, 477 S.E.2d at 67.

When more than one insurance policy affords coverage for a loss, "[t]he liability of each company must be determined by the terms of its own policy." Hlasnick v. Federated Mut. Ins. Co., 136 N.C. App. 320, 330, 524 S.E.2d 386, 393 (quotations omitted), aff'd in part and disc. review improvidently allowed in part, 353 N.C. 240, 539 S.E.2d 274 (2000); see Gaston Cnty. Dyeing Mach. Co., 351 N.C. at 305, 524 S.E.2d at 566; Allstate Ins. Co. v. Shelby Mut. Ins. Co., 269 N.C. 341, 346, 152 S.E.2d 436, 440 (1967). "The terms of another contract between different parties cannot affect the proper construction of the provisions of an insurance policy." Allstate Ins. Co., 269 N.C. at 346, 152 S.E.2d at 440; see Reliance Ins. Co. v. Lexington Ins. Co., 87 N.C. App. 428, 434, 361 S.E.2d 403, 407 (1987). Where more than one policy applies to the event at issue and each policy contains an "other insurance" clause, the court must examine the "other insurance" clauses in the competing policies "to determine which policy provides primary coverage and which policy provides excess coverage." Cinoman v. Univ. of N.C., 234 N.C. App. 481, 484–85, 764 S.E.2d 619, 622–23 (2014); see Hlasnick, 136 N.C. App. at 328–29, 524 S.E.2d at 391–92. Where the "other insurance" clauses in the policies are mutually repugnant, the claims will be prorated. See Hlasnick, 136 N.C. App. at 330, 524 S.E.2d at 393; N.C. Farm Bureau Mut. Ins. Co. v. Bost, 126 N.C. App. 42, 52, 483 S.E.2d 452, 458–59 (1997). However, there is no need "to prorate coverage where . . . the 'other insurance' clauses are not mutually repugnant, but may be read together harmoniously."

6

Hlasnick, 136 N.C. App. at 330, 524 S.E.2d at 393; see Iodice v. Jones, 133 N.C. App. 76, 79 & n.3, 514 S.E.2d 291, 293–94, 293 n. 3 (1999). "A construction which will give a fair meaning to both terms as used in the 'other insurance' clauses is preferable to finding repugnancy." Fid. & Cas. Co. of N.Y. v. N.C. Farm Bureau Mut. Ins. Co., 16 N.C. App. 194, 204, 192 S.E.2d 113, 121 (1972); see Nationwide Mut. Ins. Co. v. Integon Nat. Ins. Co., 232 N.C. App. 44, 50, 753 S.E.2d 388, 393 (2014) ("[W]hen policies are not identical in form or effect, they are not mutually repugnant."); Hlasnick, 136 N.C. App. at 330, 524 S.E.2d at 393.

North Carolina appellate courts recognize distinct types of "other insurance" clauses when determining which coverage is primary between two policies with "other insurance" clauses. See, e.g., Cinoman, 234 N.C. App. at 485–86, 764 S.E.2d at 622–23; Horace Mann Ins. Co. v. Cont'l Cas. Co., 54 N.C. App. 551, 556, 284 S.E.2d 211, 213 (1981). "An excess clause is a type of 'other insurance' clause which 'generally provides that if other valid and collectible insurance covers the occurrence in question, the "excess" policy will provide coverage only for liability above the maximum coverage of the primary policy or policies.'" Cinoman, 234 N.C. App. at 485, 764 S.E.2d at 622; see Aetna Cas. & Sur. Co. v. Cont'l Ins. Co., 110 N.C. App. 278, 282, 429 S.E.2d 406, 409 (1993); Horace Mann Ins. Co., 54 N.C. App. at 555, 284 S.E.2d at 213. "An excess clause is distinguishable from a pro rata 'other insurance' clause." Cinoman, 234 N.C. App. at 485, 764 S.E.2d at 622; see Fid. & Cas. Co., 16 N.C. App. at 203–04, 192 S.E.2d at 120–21 ("The terms 'prorate' and 'excess' do not have, and were not meant by the insurers to have identical meanings."). In determining which policy is primary, "[w]here a pro rata clause in one policy competes with an excess clause in another policy, the policy with the pro rata clause provides primary coverage, and the policy with the excess clause provides secondary coverage which will only be triggered if the limits of the policy containing the pro rata clause are first exhausted." Cinoman, 234 N.C. App. at 48–865, 764 S.E.2d at 623; see Bowser v. Williams, 108 N.C. App. 8, 16, 422 S.E.2d 355, 360 (1992), overruled on other grounds by McMillian v. N.C. Farm Bureau Mut. Ins. Co., 347 N.C. 560,

7

495 S.E.2d 352 (1998); Fid. & Cas. Co., 16 N.C. App. at 204, 192 S.E.2d at 121. But "where a pro rata clause in one policy competes with a pro rata clause in another policy, each insurer has primary concurrent liability for a proportionate amount of the loss." Cinoman, 234 N.C. App. at 485, 764 S.E.2d at 623 (citing 44A AM. JUR. 2d Insurance § 1752 (2013)); see Bost, 126 N.C. App. at 52, 483 S.E.2d at 458–59 ("When 'excess' clauses in several policies are identical, the clauses are deemed mutually repugnant and neither excess clause will be given effect, leaving the insured's claim to be pro rated between the separate policies according to their respective limits."). The North Carolina Court of Appeals also has distinguished between policies all claiming to be excess, where one policy "insured a primary/secondary risk" and the others insured against "contingent excess liability." Reliance Ins. Co., 87 N.C. App. at 437, 361 S.E.2d 403 at 408.

III.

Liberty and GuideOne have filed cross motions for summary judgment and each seeks payment from the other based on the allocation of insurance payment in the Lujan settlement. On September 5, 2019, Lujan signed a Release and Settlement Agreement, releasing his claims in the Lujan Action for $3 million. See GuideOne SMF ¶¶ 25, 29; Liberty SMF ¶ 30. GuideOne contributed $2.1 million to fund the settlement, which represented the $1 million per occurrence coverage limit of the GuideOne CGL Policy and a payment of $1.1 million pursuant to the GuideOne Umbrella Policy. Liberty contributed $900,000 to fund the settlement pursuant to the Liberty Policy. See GuideOne SMF ¶¶ 26–27.

Liberty argues that GuideOne failed to expressly reserve its rights and therefore waived its claim to any repayment based on the allocation of the settlement payments. See [D.E. 42] 10–11. GuideOne disagrees and cites the reservation of rights included in the mediated and final settlement agreements in the Lujan Action as evidence that it reserved the right to seek contribution from Liberty. See, e.g., [D.E. 38-3] 3; [D.E. 45] 13–14. Liberty also argues that its pro rata share should have been the $333,333 (one-sixth of the $2 million remaining after the primary policy was

8

exhausted) that it overpaid, and that GuideOne owes Liberty $566,666. See [D.E. 45] 13–14. GuideOne responds that Liberty was obligated to pay its full 1 million dollar policy amount and that Liberty owes GuideOne $100,000. See [D.E. 45] 11.

A.

The court initially addresses Liberty's waiver argument. Under North Carolina law, "[a] waiver is a voluntary and intentional relinquishment of a known right or benefit. It is usually a question of intent." Adder v. Holman & Moody, Inc., 288 N.C. 484, 492, 219 S.E.2d 190, 195 (1975). "A person may expressly dispense with the right by a declaration to that effect, or he may do so with the same result by conduct which naturally and justly leads the other party to believe that he has so dispensed with the right." Guerry v. Am. Tr. Co., 234 N.C. 644, 648, 68 S.E.2d 272, 275 (1951); see also Wilmington Furniture Co. v. Cole, 207 N.C. 840, 178 S.E. 579, 583 (1935); Alexander v. N.C. Saving Bank & Trust Co., 155 N.C. 124, 71 S.E. 69, 70 (1911) (per curiam). Waiver generally requires "some positive act upon which, in connection with the knowledge, a waiver may be predicated." Clemmons v. Nationwide Mut. Ins. Co., 267 N.C. 495, 504, 148 S.E.2d 640, 647 (1966).

Liberty argues that because Liberty and GuideOne were not parties to the settlement agreements, the reservations of rights in the settlement agreements are not effective. See [D.E. 48]. Notably, Liberty also reserved its rights in those agreements, but Liberty does not rely on those reservations. Rather, for its own reservation of rights, Liberty cites a letter that it sent to GuideOne during settlement negotiations that explains Liberty's coverage position concerning the settlement. See [D.E. 54] 7; [D.E. 42-2] 478–82. GuideOne responds that the counsel it provided for Chowan and the counsel that Liberty provided for Bland also represented the insurers in the settlement and therefore had the power to bind those parties. See [D.E. 45] 13–14.

The relevant clause in the mediated settlement agreement reads: "This settlement constitutes a resolution of all issues between Plaintiff and Defendants. The settlement agreement shall have no

9

effect on any claims that Liberty has or may have against GuideOne or that GuideOne has or may have against Liberty. Both carriers expressly reserve and do not waive any rights either may have against the other from this litigation." [D.E. 38-5] 403–04. The record contains emails between Jonathan Hall (counsel GuideOne provided for Chowan in the Lujan Action) and Carrie Meigs (counsel Liberty provided for Bland in the Lujan Action) asserting GuideOne was unhappy with the insurance carrier language in the Release. See id. at 412–13. The September 5, 2019 Release and Settlement Agreement lists Lisa Bland, Chowan, GuideOne, and Liberty as the "Releasees." Id. at 405; [D.E. 42-2] 445–46.[2] That agreement states that it "shall have no effect on the rights otherwise reserved by Liberty and GuideOne as set forth in the August 1, Mediated Settlement Agreement." [D.E. 38-5] at 407. Only Lujan signed the Release. See id. at 410–11. Thus, the release supports GuideOne's position that the insurers were parties to the Release and Settlement Agreement in which both insurers reserved their rights.

Liberty disputes GuideOne's contention that counsel in the Lujan Action represented both the parties and the insurers. However, the exchange of letters that Liberty cites as the source of its reservation dooms its position on waiver. See [D.E. 42-2] 475–81; Liberty SMF ¶¶ 25–27 (referring to the letter exchange in which GuideOne proposed that "GuideOne contribute [two-thirds] of any settlement money and your client contribute the other [one-third]" and "Liberty expressly reserved its rights to recover."). Specifically, in GuideOne's April 17, 2019 letter, Jonathan Hall suggested that GuideOne contribute two-thirds of a $3 million settlement and Liberty contribute one-third of such a settlement. See [D.E. 42-2] 475. This allocation is GuideOne's current position on the correct allocation of settlement payments. Jonathan Hall sent this letter to Carrie Megis "to attempt to ascertain exactly what Liberty Mutual's position is[.]" Id. Hall's letter refers to negotiations with plaintiffs' counsel and refers to an allocation between "your client" and "my client." Id. In the letter

---

[2] The parties submitted identical copies of the final Release and Settlement Agreement with their respective appendices to their statements of material facts.

10

Hall explicitly stated that "GuideOne has authorized me to pursue settlement discussions with Plaintiff's counsel." Id.; see Munn v. Haymount Rehab. & Nursing Ctr., Inc., 208 N.C. App. 632, 638, 704 S.E.2d 290, 295–96 (2010); cf. Raymond v. N. C. Police Benevolent Ass'n., Inc., 365 N.C. 94, 98, 721 S.E.2d 923, 926 (2011); Nationwide Mut. Fire Ins. Co. v. Bourlon, 172 N.C. App. 595, 602–03, 617 S.E.2d 40, 45–46 (2005), aff'd per curiam, 360 N.C. 356, 625 S.E.2d 779 (2006). On July 16, 2019, Ronald P. Schiller responded to GuideOne "as coverage counsel for Liberty" and described the same coverage position that Liberty advances in this action. [D.E. 42-2] 478–81. Schiller addressed that letter to Hall. See id. at 478. In Schiller's letter, Liberty "reserve[d] all of its rights under the Policy, including but not limited to, the right to assert a claim for contribution against GuideOne, and the right to revise or supplement this letter." Id. at 481.

The record reflects that both Liberty and GuideOne understood that Hall was authorized to represent both Chowan and GuideOne in the settlement. And far from demonstrating that GuideOne intended to waive its rights to pursue its asserted payment allocation on the settlement, GuideOne's statements (through Hall) in the settlement negotiations, the mediated settlement agreement, and release and settlement agreement demonstrate GuideOne's intention to reserve its rights. See Adder, 288 N.C. at 492, 219 S.E.2d at 195. GuideOne did not waive its rights to contest the allocation of payments.

B.

GuideOne argues, inter alia, that the standard practice in insurance cases is to only apply "mutual repugnance" to policies on the same "tier of coverage." See [D.E. 38-3] 21–22. Based on this approach, GuideOne argues that the GuideOne Umbrella Policy is a "true excess" policy while the Liberty policy is not and Liberty must pay its full 1 million dollar policy amount. See id. Liberty responds that when two non-primary insurance policies contain "mutually repugnant" provisions, North Carolina courts disregard the conflicting provisions and assign payment on a pro rata basis.

See Hlasnick, 136 N.C. App. at 330, 524 S.E.2d at 393; Bost, 126 N.C. App. at 52, 483 S.E.2d at 458–59.

A court should not apply mutual repugnance where the court harmoniously can construe the policies. See Fid. & Cas. Co. of N.Y., 16 N.C. App. at 204, 192 S.E.2d at 121; Integon Nat. Ins. Co., 232 N.C. App. at 50, 753 S.E.2d at 393; Hlasnick, 136 N.C. App. at 330, 524 S.E.2d at 393. Therefore, the court first must look to the policy language to determine if there is a "construction which will give a fair meaning to" the 'other insurance' clauses in both policies. Fid. & Cas. Co. of N.Y., 16 N.C. App. at 204, 192 S.E.2d at 121; see Integon, 232 N.C. App. at 50, 753 S.E. 2d at 393; Hlasnick, 136 N.C. App. at 330, 524 S.E.2d at 393.

Under North Carolina law the language of the applicable policies is central to the inquiry. The GuideOne CGL Policy states "[t]his insurance is primary except when paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in paragraph c. below." [D.E. 38-5] 300. The parties agree that the GuideOne CGL Policy provided the primary coverage for the Lujan settlement, and GuideOne paid out to the policy limit of $1 million for this occurrence. See [D.E. 48] 8.

The GuideOne Umbrella Policy states:

This insurance is excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis, except such other insurance purchased specifically to apply in excess of this insurance.

We will pay only our share of the amount of "ultimate net loss", if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; . . . .

[D.E. 38-5] 45. The Liberty Policy states:

If there is other valid insurance (whether primary, excess, contingent or self-insurance) which may apply against a loss or claim covered by this policy, the

12

insurance provided hereunder shall be deemed excess insurance over and above the applicable limit of all other insurance or self-insurance.

[W]hen both this insurance and other insurance or self-insurance <u>apply to the loss on the same basis</u>, whether primary, excess or contingent, the Company shall not be liable under this policy for a greater proportion of the loss or defense costs than the applicable Limit of Liability under this policy for such loss bears to the total applicable limits of liability of all valid and collectible insurance against such loss. Subject to the foregoing, if a loss occurs involving two or more policies, each of which provides that its insurance shall be excess, each will contribute pro-rata.

[D.E. 42-2] 371 (emphasis added).

The Liberty Policy states that it will contribute pro rata "when both this insurance and other insurance or self-insurance apply to the loss on the same basis[.]" <u>Id.</u> Giving effect to this language in the Liberty Policy requires the court to determine whether it and the GuideOne Umbrella Policy "apply to the loss on the same basis[.]" <u>Id.</u> In <u>Reliance</u>, the North Carolina Court of Appeals, addressing a similar situation, looked to the type of risk each purported excess policy insured against when determining the order in which the policies would pay. See <u>Reliance Ins. Co.</u>, 87 N.C. App. at 434–37, 361 S.E.2d at 407–09. The <u>Reliance</u> court held, based on the policy language, that one policy insured against a "primary/secondary risk" while the others insured against "contingent excess liability." <u>Id.</u>, 87 N.C. App. at 436, 361 S.E.2d at 408. As in <u>Reliance</u>, the Liberty Policy declares itself excess in the event that there is other valid insurance, but does not require an underlying policy. See [D.E. 42-2] 371. In contrast, the GuideOne Umbrella Policy does not purport to ever apply as a primary policy. See [D.E. 38-5] 45. Moreover, the GuideOne Umbrella Policy states that it "shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis, except such other insurance purchased specifically to apply in excess of this insurance" and requires Chowan to carry specific insurance coverages. <u>Id.</u> And the North Carolina Court of Appeals has distinguished between policies with pro rata clauses and those with an excess clause in the context of determining which policy is primary. See <u>Cinoman</u>, 234 N.C. App. at 485, 764 S.E.2d at 622; <u>Bowser</u>, 108 N.C. App. at 16, 422 S.E.2d at 360; <u>Fid. & Cas. Co. of N.Y.</u>, 16 N.C.App. at

13

203–04, 192 S.E.2d at 120–21. In light of the policy terms and the decision of the North Carolina Court of Appeals in Reliance, the court concludes that the coverage under the Liberty Policy was intended to "insure[] a primary/secondary risk[,]" while the GuideOne Umbrella Policy insures "contingent excess liability." Reliance Ins. Co., 87 N.C. App. at 436–37, 361 S.E.2d at 408; cf. Cinoman, 234 N.C. App. at 48–865, 764 S.E.2d at 623; Bowser, 108 N.C. App. at 16, 422 S.E.2d at 360; Fid. & Cas. Co. of N.Y., 16 N.C. App. at 203–04, 192 S.E.2d at 120–21.

Because the GuideOne Umbrella Policy and Liberty Policy do not "apply to the loss on the same basis," they are not mutually repugnant. Giving effect to the language in all three policies requires that the GuideOne CGL policy be exhausted as the primary, the Liberty policy be exhausted next because there is no other policy that applies to the loss "on the same basis" (that is pro rata or secondary), and the GuideOne umbrella be exhausted only after that. Thus, Liberty should have paid $1,000,000 as part of the settlement and owes GuideOne $100,000.[3]

IV.

In sum, the court GRANTS defendant's motion for summary judgment [D.E. 37] and DENIES plaintiff's motion for summary judgment [D.E. 41]. Plaintiff owes defendant $100,000. Defendant may file a motion for costs in accordance with the Federal Rules of Civil Procedure and this court's local rules. The clerk shall close the case.

SO ORDERED. This 23 day of August, 2022.

JAMES C. DEVER III
United States District Judge

---

[3] The court's conclusion also comports with the general principle that the GuideOne Umbrella Policy is "true excess" coverage as opposed to what courts sometimes refer to as "coincidental excess" insurance coverage. See Mut. Assurance Soc. of Va. v. Fed. Ins. Co., No. 20-1149, 2022 WL 112078, at *4–7 (4th Cir. Jan. 12, 2022) (per curiam) (unpublished); Horace Mann Ins. Co. v. Gen. Star Nat. Ins. Co., 514 F.3d 327, 328–39 (4th Cir. 2008); 14 COUCH ON INSURANCE (3d ed. 2022) § 200:40.